UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
BROOKLYN DIVISION

| | |
|---|---|
| DISH NETWORK L.L.C., | Case No.: _____ |
| Plaintiff, | |
| v. | |
| EXPONENT SOLUTIONS LLC, ASHRAF JAHANZAIB, and MOHSIN TANVEER, | |
| Defendants. | |

**PLAINTIFF'S COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Plaintiff DISH Network L.L.C. brings this action against Defendants Exponent Solutions LLC, Ashraf Jahanzaib, and Mohsin Tanveer ("Defendants") for trademark infringement and other violations of the Lanham Act, tortious interference with existing contract and prospective business relations, and unfair competition based on Defendants' unauthorized use of DISH's trademarks in a telemarketing scheme to deceive DISH's subscribers for purposes of Defendants' financial gain.

**PARTIES**

1. Plaintiff DISH Network L.L.C. ("DISH") is a Colorado limited liability company, having its principal place of business at 9601 S. Meridian Blvd., Englewood, Colorado 80112.

2. Defendant Exponent Solutions LLC is a New York limited liability company with a stated office location of Kings County, New York.

3. Defendant Ashraf Jahanzaib ("Jahanzaib") is believed to reside in Brooklyn, New York. Jahanzaib is President of Exponent Solutions LLC. Upon information and belief, Jahanzaib authorizes, controls, participates in, and receives direct financial benefits from the unlawful acts of Exponent Solutions LLC alleged herein. Jahanzaib's actions performed as an agent of Exponent Solutions LLC (together, "Exponent") are believed to have been within the scope of his agency.

4.      Jahanzaib owns and operates the domain name saveologyonline.com ("Saveology Online"). Upon information and belief, Jahanzaib is also assigned or otherwise in control of P.O. Box 300468 in Brooklyn, New York ("Brooklyn P.O. Box"). Saveology Online and the Brooklyn P.O. Box are used in Defendants' telemarketing scheme, as described below.

5.      Defendant Mohsin Tanveer ("Tanveer") is believed to reside in Staten Island, New York. Tanveer was the registrant of the domain names hopperdiscount.com, hoppersavings.com, hopperdeals.com, and, upon information and belief, currently owns and operates the domain name dhopper.com ("DHopper"). Telephone numbers associated with these domain names include 818-332-1611 and 818-230-2269. The foregoing telephone numbers are used to conduct Defendants' telemarketing scheme, as described below.

6.      Upon information and belief, Exponent engages in telemarketing calls directly or, in the alternative or in addition, through Tanveer or one or more call centers located outside of the United States. Tanveer and the call centers are believed to serve as agents of Exponent by making the telemarketing calls and soliciting DISH subscribers at Exponent's direction and for its financial benefit. Alternatively, Exponent serves as an agent and business partner of Tanveer and the call centers by engaging in the acts alleged herein.

## JURISDICTION & VENUE

7.      The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367(a).

8.      Defendants reside in and conduct business in the State of New York, and therefore are subject to the Court's personal jurisdiction.

9.      Venue is proper in this Court under 28 U.S.C. § 1391 because Defendants reside in this judicial district and a substantial part of the events that give rise to DISH's claims occurred in this judicial district.

## DISH'S TRADEMARKS

10. DISH is the fourth largest pay-television provider in the United States and delivers programming to millions of subscribers nationwide by means of satellite and the Internet. DISH maintains contracts with DISH subscribers to whom it provides television services and equipment.

11. DISH owns the following marks that are registered with the United States Patent and Trademark Office ("USPTO"):

| Mark | Registration # | Registration Date | Goods/Services |
|---|---|---|---|
| dish NETWORK (logo) | 2155313 | May 5, 1998 | Communications equipment, including receivers, antennae, and software |
| dish NETWORK (logo) | 3464055 | July 8, 2008 | Installation services for satellite receivers<br><br>Telecommunication services, including the satellite transmission of television services |
| DISH NETWORK | 3264300 | January 17, 2007 | Communications equipment including receivers, antennae, and software<br><br>Telecommunication services, including the satellite transmission of television services |
| DISH | 3440594 | June 3, 2008 | Communications equipment including receivers, antennae, and software<br><br>Telecommunication services, including the satellite transmission of television services |

| DISH | 4206082 | September 11, 2012 | Installation services for satellite receivers |

Exhibit 1 contains a copy of each registration and any applicable assignment to DISH. The foregoing are collectively referred to as the "DISH Marks."

12. DISH used the DISH Marks continuously in commerce for a number of years in the course of providing its television services and equipment in the United States. DISH has devoted substantial time, effort, and resources to the development and extensive promotion of its television services and equipment under the DISH Marks. As a result, the DISH Marks acquired significant recognition in the marketplace and embody the substantial and valuable goodwill of DISH.

13. The registrations for the DISH Marks set forth in Exhibit 1 are valid and subsisting and constitute presumptive evidence of their validity and ownership by DISH. The registration of the DISH Marks constitutes constructive notice to Defendants of DISH's ownership and exclusive rights in the DISH Marks. Upon information and belief, Defendants are aware of the popularity and fame of the DISH Marks and the goodwill associated with the DISH Marks.

## DEFENDANTS' WRONGFUL CONDUCT

14. Exponent directly, or through Tanveer and call centers that are acting as its agents or principals, use the DISH Marks as part of a telemarketing scheme to swindle DISH's subscribers into paying Exponent for fraudulent television equipment upgrades (the "Upgrade Service"). The Upgrade Service has been operating since at least as early as August 2016.

15. Telephone calls are made to DISH's subscribers using telephone numbers that have included 855-295-1231, 818-332-1611, and 818-230-2269.

16. The callers identify themselves during the calls using fake names or aliases such as Sam Bates, Johnathan Charles, William Johnson, Jeff Martin, David Maux or Mark, Daniel Marky, Mike Melvin, Steve or Stefan Miles, Paul Mendoza, Sam Stevens or Stevenson, Jessica, and Ryan.

17. DISH's subscribers are misled to believe that these calls come directly from DISH because the telephone caller ID is spoofed to display DISH, DISH Network, or 1-800-333-DISH, which is DISH's toll-free telephone number.

18. DISH's subscribers are further misled to believe that these calls come directly from DISH because the callers verbally identify themselves as DISH. Alternatively, DISH's subscribers are informed that the calls come from Exponent, Saveology Online, or Discount Zooms, which are falsely represented to be authorized retailers or affiliates of DISH.

19. Upon information and belief, Defendants also falsely affiliate themselves and their Upgrade Service with DISH using the DHopper website. The DHopper website offers consumers "[u]p to 20% off on Dish." The website also advises that "[t]he DHOPPER teams works closely with our vendors to deliver … the best prices." The DISH Network design mark, identified in the table above, is prominently displayed with the foregoing statements on the DHopper website.

20. Neither Defendants nor the Upgrade Service is affiliated with DISH in any manner. Defendants and any other telemarketers involved in the Upgrade Service are not authorized to use the DISH Marks in any way.

21. DISH's subscribers are deceived during these calls by false representations that an event has occurred requiring DISH to upgrade or otherwise adjust the DISH subscribers' television equipment to prevent them from losing access to programming they are currently receiving from DISH. The services offered by the callers include adjusting the DISH subscriber's satellite dish antennae, updating software in the DISH subscriber's set-top box, and replacing that set-top box with DISH's newer, Hopper model device.

22. DISH's subscribers are falsely informed that they must remit payment to Exponent or Saveology Online for the upgrade or adjustment to their television equipment. Defendants often

times advise the DISH subscribers that their payment will be refunded by DISH in the form of a gift card or credits reflected on their monthly DISH bill.

23. DISH subscribers that fell victim to the Upgrade Service scheme mailed checks to Exponent's Brooklyn P.O. Box, or paid by credit card or debit card over the telephone. The credit card and debit card transactions were processed through accounts held in the names of Saveology Online and Discount Zooms, both of which are associated with Exponent.

24. Exponent directly, or through Tanveer and call centers that are acting as its agents or principals, have defrauded DISH's subscribers as described herein on several occasions, which resulted in DISH subscribers terminating their agreements with DISH entirely and a diminishment in the business reputation and goodwill that DISH maintains with its subscribers.

## REPRESENTATIVE EXAMPLES

### *DISH Subscriber 3790*

25. On or about August 26, 2016, a DISH subscriber with the DISH account number ending 3790 ("DISH Subscriber 3790") received a call from the telephone number 818-230-2269.

26. The caller introduced himself as William and stated that he was calling from DISH.

27. The caller misrepresented to DISH Subscriber 3790 that DISH needed to update the subscriber's television equipment. DISH Subscriber 3790 was asked to pay $150 for the equipment update, which according to the caller would be subsequently refunded to the subscriber by DISH.

28. DISH Subscriber 3790 made a payment of $149.69 by debit card over the telephone based on the caller's false representations. DISH Subscriber 3790's bank account statement shows that the payment was received by Saveology Online.

*DISH Subscriber 5661*

29.     On or about August 11, 2016, a DISH subscriber with the DISH account number ending 5661 ("DISH Subscriber 5661") received a call from the telephone number 855-295-1231.

30.     The caller introduced himself as Ryan and stated that he was calling from Discount Zooms. The caller falsely represented that Discount Zooms was affiliated with DISH. The caller provided DISH Subscriber 5661 with the call back number of 818-230-2269.

31.     The caller misrepresented to DISH Subscriber 5661 that DISH needed to upgrade the software on their television equipment. DISH Subscriber 5661 made a $150 payment by credit card over the telephone based on the caller's false representations. DISH Subscriber 5661's credit card statement shows the payment was received by Discount Zooms, having the telephone number 516-243-1345, which is the same telephone number associated with Saveology Online.

*DISH Subscriber 3417*

32.     On or about July 30, 2018, a DISH subscriber with the DISH account number ending 3417 ("DISH Subscriber 3417") received a call from the telephone number 855-295-1231.

33.     The caller introduced himself as Daniel Marky and stated that he was calling from Exponent. The caller falsely represented that Exponent was taking over DISH subscriber accounts on behalf of DISH. DISH Subscriber 3417 was instructed to mail a check in the amount of $140 to Exponent at the Brooklyn P.O. Box to avoid losing access to DISH television programming.

*DISH Subscriber 1087*

34.     On or about May 15, 2017, a DISH subscriber with the DISH account number ending 1087 ("DISH Subscriber 1087") received a call from the telephone number of 855-295-1231.

35.     DISH Subscriber 1087's caller ID showed that the call came from DISH; however, DISH did not make this call to the subscriber. The caller introduced himself as Sam Stevenson.

36. The caller misrepresented to DISH Subscriber 1087 that DISH needed to update the subscriber's television equipment. DISH Subscriber 1087 was asked to pay $150 for the equipment update, which according to the caller would be subsequently refunded to the subscriber by DISH.

37. DISH Subscriber 1087 was instructed to mail a check to the Brooklyn P.O. Box or pay by credit card over the telephone. DISH Subscriber 1087 made a $150 payment by credit card over the telephone based on the caller's false representations.

## CLAIMS FOR RELIEF

### COUNT I

**(Trademark Infringement Under 15 U.S.C. § 1114(1) – All Defendants)**

38. DISH incorporates the allegations in paragraphs 1-37 as if set forth fully herein.

39. DISH owns the DISH Marks that are registered with the USPTO having registration numbers 2155313, 3464055, 3264300, 3440594, and 4206082. DISH uses the DISH Marks in the course of providing its television services and equipment in the United States.

40. Defendants use reproductions, counterfeits, copies, or colorable imitations of the DISH Marks in commerce, and without authorization, in connection with the Upgrade Service.

41. Defendants' unauthorized use of the DISH Marks caused and will likely continue to cause confusion, mistake, or deception among consumers as to whether Defendants are affiliated, connected, or associated with DISH, and whether Defendants' Upgrade Service is sponsored by or approved by DISH, in violation of the Lanham Act section 32(1), 15 U.S.C. § 1114(1).

42. Defendants' actions are willful, intentional, purposeful, and in disregard of and with indifference to the rights of DISH.

43. Unless enjoined by the Court, Defendants will continue to engage in actions causing substantial and irreparable injury to DISH that includes damage to its reputation and goodwill and lost subscribers for which there is no adequate remedy at law.

## COUNT II

### (Unfair Competition And False Advertising Under 15 U.S.C. § 1125 – All Defendants)

44. DISH incorporates the allegations in paragraphs 1-37 as if set forth fully herein.

45. DISH owns the DISH Marks that are registered with the USPTO having registration numbers 2155313, 3464055, 3264300, 3440594, and 4206082. DISH uses the DISH Marks in the course of providing its television services and equipment in the United States.

46. Defendants use reproductions, counterfeits, copies, or colorable imitations of the DISH Marks in commerce, and without authorization, in connection with the Upgrade Service.

47. Defendants' unauthorized use of the DISH Marks caused and will likely continue to cause confusion, mistake, or deception among consumers as to whether Defendants are affiliated, connected, or associated with DISH, and whether the Upgrade Service is sponsored by or approved by DISH, in violation of the Lanham Act section 43(a), 15 U.S.C. § 1125(a)(1)(A).

48. Defendants make false and misleading representations of fact to DISH's subscribers concerning the nature, characteristics, and qualities of the Upgrade Service and DISH's television equipment and services, in violation of the Lanham Act section 43(a), 15 U.S.C. § 1125(a)(1)(B).

49. Defendants' false and misleading statements are material because these statements induced or influenced DISH's subscribers to purchase the Upgrade Service and are likely to induce or influence additional DISH subscribers to purchase the Upgrade Service.

50. Defendants' false and misleading statements already deceived DISH's subscribers and have the tendency to deceive a substantial segment of DISH's subscribers.

51. Defendants' actions are willful, intentional, purposeful, and in disregard of and with indifference to the rights of DISH.

52. Unless enjoined by the Court, Defendants will continue to engage in actions causing substantial and irreparable injury to DISH that includes damage to its reputation and goodwill and lost subscribers for which there is no adequate remedy at law.

### COUNT III

**(Contributory Trademark Infringement – Exponent Defendants)**

53. DISH incorporates the allegations in paragraphs 1-37 as if set forth fully herein.

54. DISH owns the DISH Marks that are registered with the USPTO having registration numbers 2155313, 3464055, 3264300, 3440594, and 4206082. DISH uses the DISH Marks in the course of providing its television services and equipment in the United States.

55. Reproductions, counterfeits, copies, or colorable imitations of the DISH Marks are used in commerce, and without authorization, in connection with the Upgrade Service.

56. The unauthorized use of the DISH Marks caused and will likely continue to cause confusion, mistake, or deception among consumers as to whether the telemarketers are affiliated, connected, or associated with DISH, and whether the Upgrade Service is sponsored by or approved by DISH.

57. Exponent, if not directly infringing the DISH Marks, contributes to the infringement of the DISH Marks by collecting and processing payments from the DISH subscribers deceived by the Upgrade Service, in the form of checks delivered to its Brooklyn P.O. Box and credit card and debit card transactions processed through its Saveology Online and Discount Zooms accounts.

58. Exponent further contributes to the infringement of the DISH Marks by authorizing the use of its name and that of Saveology Online to serve as the face for the Upgrade Service, which is intended to give a false sense of legitimacy to the telemarketing scheme.

59. The Upgrade Service was designed and implemented to rely on Exponent's payment collection and processing services and public appearance for its success. Exponent and the callers collaborated in advance because the callers knew to provide Exponent's name or that of Saveology Online and the Brooklyn P.O. Box to DISH subscribers during the telemarketing calls. The credit and debit card information that DISH subscribers provided to the callers resulted in payments being processed through Exponent's accounts. Exponent has direct control over the Upgrade Service because it would cease to function without this critical participation from Exponent.

60. Exponent had actual knowledge or elected to remain willfully blind to the fact that its payment collection and processing services and public appearance were being used to facilitate the infringement of the DISH Marks.

61. Unless enjoined by the Court, Exponent will continue to engage in actions causing substantial and irreparable injury to DISH that includes damage to its reputation and goodwill and lost subscribers for which there is no adequate remedy at law.

## COUNT IV

### (Vicarious Trademark Infringement – Exponent Defendants)

62. DISH incorporates the allegations in paragraphs 1-37 as if set forth fully herein.

63. DISH owns the DISH Marks that are registered with the USPTO having registration numbers 2155313, 3464055, 3264300, 3440594, and 4206082. DISH uses the DISH Marks in the course of providing its television services and equipment in the United States.

64. Reproductions, counterfeits, copies, or colorable imitations of the DISH Marks are used in commerce, and without authorization, in connection with the Upgrade Service.

65. The unauthorized use of the DISH Marks caused and will likely continue to cause confusion, mistake, or deception among consumers as to whether the telemarketers are affiliated, connected, or associated with DISH, and whether the Upgrade Service is sponsored by or approved by DISH.

66. Exponent, if not directly infringing the DISH Marks, has control over and maintains a direct financial interest in the infringement of the DISH Marks through the Upgrade Service, thus subjecting Exponent to vicarious liability. Exponent has control over the Upgrade Service because its payment collection and processing services and public appearance are necessary for the Upgrade Service to effectively function.

67. Upon information and belief, Exponent maintains a direct financial interest in the infringement of the DISH Marks through the Upgrade Service because Exponent keeps at least part of the payments received from DISH subscribers that fell victim to the telemarketing scheme, which consist of checks sent to its Brooklyn P.O. Box and credit card and debit card transactions processed through its Saveology Online and Discount Zooms accounts.

68. Exponent is also vicariously liable for the infringement of the DISH Marks because it has an apparent or actual partnership with the persons making the telemarketing calls. The callers use Exponent's name and that of Saveology Online to provide the Upgrade Service; Exponent and the callers collaborate in advance on what to say to DISH subscribers during the calls; Exponent and the callers work together to process credit card or debit card payments from DISH subscribers; and Exponent and the callers are believed to share the proceeds of the Upgrade Service scheme.

69. Unless enjoined by the Court, Exponent will continue to engage in actions causing substantial and irreparable injury to DISH that includes damage to its reputation and goodwill and lost subscribers for which there is no adequate remedy at law.

## COUNT V

**(Tortious Interference With Existing Contract Under New York Law – All Defendants)**

70. DISH incorporates the allegations in paragraphs 1-37 as if set forth fully herein.

71. Defendants provide the Upgrade Service to DISH subscribers that are under valid and existing contracts with DISH.

72. Upon information and belief, Defendants are aware of the contracts between DISH and DISH subscribers to whom they provide the Upgrade Service.

73. Defendants intentionally and without justification interfere with contracts between DISH and DISH subscribers by providing the Upgrade Service.

74. Defendants' actions proximately harm DISH in the form of damage to its reputation and goodwill and lost subscribers.

75. Defendants' acts of misrepresentation, misappropriation, and extortion are wanton and malicious, gross and outrageous, in conscious disregard of, and are undertaken with a deliberate intent to interfere with DISH's rights, entitling DISH to recover punitive damages from Defendants.

## COUNT VI

**(Tortious Interference With Prospective Business Relations**

**Under New York Law – All Defendants)**

76. DISH incorporates the allegations in paragraphs 1-37 as if set forth fully herein.

77. Defendants provide the Upgrade Service to DISH subscribers that are under valid and existing contracts with DISH.

78. There is a reasonable probability of DISH entering into additional contracts with the DISH subscribers to continue their DISH services.

79. Defendants intentionally and without justification interfere with DISH's prospective business relations with the DISH subscribers by providing the Upgrade Service.

80. Defendants' actions proximately harm DISH in the form of damage to its reputation and goodwill and lost subscribers.

81. Defendants' acts of misrepresentation, misappropriation, and extortion are wanton and malicious, gross and outrageous, in conscious disregard of, and are undertaken with a deliberate intent to interfere with DISH's rights, entitling DISH to recover punitive damages from Defendants.

## COUNT VII
### (Unfair Competition Under New York Law Against All Defendants)

82. DISH incorporates the allegations in paragraphs 1-37 as if set forth fully herein.

83. Defendants are misappropriating the labors, expenditures, and goodwill of DISH by providing the Upgrade Service. Defendants or other telemarketers falsely affiliate themselves with DISH and deceive DISH's subscribers by misrepresenting that the subscribers will lose access to programming unless payment is remitted to Exponent for an equipment upgrade or adjustment.

84. Defendants' misconduct already confused and deceived DISH's subscribers and is likely to confuse and deceive additional DISH subscribers.

85. Defendants' actions proximately harm DISH in the form of damage to its reputation and goodwill and lost subscribers.

86. Defendants provide the Upgrade Service in bad faith and with the intent to unfairly trade on and misappropriate the reputation and goodwill of DISH.

87. Defendants' acts of misrepresentation, misappropriation, and extortion are wanton and malicious, gross and outrageous, in conscious disregard of, and are undertaken with a deliberate intent to interfere with DISH's rights, entitling DISH to recover punitive damages from Defendants.

## **PRAYER FOR RELIEF**

WHEREFORE, DISH requests a judgment against Defendants as follows:

A. For a grant of permanent injunctive relief restraining and enjoining Defendants, and any of their agents, servants, employees, attorneys, or other persons that are acting in active concert or participation with any of the foregoing that receives actual notice of the order, from:

1. using in any manner the DISH Marks, any variation thereof, or otherwise infringing DISH's trademarks either directly, contributorily, or vicariously, as authorized by 15 U.S.C. § 1116(a);

2. providing the Upgrade Service, collecting or processing payments for the Upgrade Service, or otherwise contacting DISH subscribers regarding their existing or prospective relationship with DISH;

3. representing to the public in any manner that Defendants are affiliated with, endorsed by, or otherwise work on behalf of DISH;

B. For disgorgement of Defendants' profits attributable to the violations alleged herein as provided by law;

C. For treble damages or profits under 15 U.S.C. § 1117;

D. ~~For statutory damages under 15 U.S.C. § 1117;~~

E. For DISH's attorneys' fees and costs under 15 U.S.C. § 1117;

F. For punitive damages under New York statutory and common law;

G.	For pre- and post-judgment interest on all damages, from the earliest date permitted by law at the maximum rate permitted by law; and

H.	For such additional relief as the Court deems just and equitable.

Dated: September 4, 2018						Respectfully submitted,

/s/ Robert R. Jones
**COUGHLIN & GERHART, LLP**
Robert R. Jones, Esq.
99 Corporate Drive
Binghamton, NY 13904
Telephone: (607) 723-9511
Facsimile: (607) 723-1530
rjones@cglawoffices.com

**HAGAN NOLL & BOYLE, LLC**
Timothy M. Frank (*pro hac vice* to be filed)
Two Memorial City Plaza
820 Gessner, Suite 940
Houston, Texas 77024
Telephone: (713) 343-0478
Facsimile: (713) 758-0146
timothy.frank@hnbllc.com

Attorneys for Plaintiff DISH Network L.L.C.